UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE SMITH,<br><br>**Plaintiff,**<br><br>v.<br><br>**AMANDA GOLDMAN and DAN ROSENBAUM,**<br><br>**Defendants.** | Civil Action No.:<br>2:23-cv-04098-WJM<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court upon Amanda Goldman and Dan Rosenbaum's ("Defendants") Motion to Dismiss Bruce Smith's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF Nos. 1, 54. The Court decides the matters without oral argument. *See* Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

I.  **BACKGROUND**[1]
    A.  **Facts**[2]

Plaintiff was formerly a securities broker and investment advisor for the Union Bank of Switzerland ("UBS"), but was fired in 2018 after an internal investigation by UBS regarding the information he provided and/or allegedly failed to provide to the Securities and Exchange Commission ("SEC") during its investigation of one of the Plaintiff's clients. ECF No. 1 at ¶¶ 18, 45. UBS's in-house counsel, Defendant Goldman, arranged the SEC's interview with Plaintiff and prepared him for it. *Id.* at ¶¶ 23-26, 28. Defendant Goldman, who was present during the interview, became concerned that the Plaintiff, in her estimation, did not provide complete information to the SEC during that interview and subsequently reported her concerns to UBS. *Id.* ¶ 38. Specifically, Plaintiff had gone on a trip with a client of his to the Dominican Republic that was hosted by the client's accounting firm. *Id.* at ¶ 21. Plaintiff believed that his client was offering to pay for Plaintiff's attendance himself, rather than the client's accounting firm. *Id.* Plaintiff believed

---

[1] The Court has Diversity Jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, Plaintiff is a resident of Georgia, Defendant Goldman is a resident of New Jersey, and Defendant Rosenbaum is a resident of New York. Compl. at ¶¶ 5-8.

[2] The following allegations are taken from Plaintiff's complaint and are accepted as true. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

that the questions during the SEC interview did not specifically call for the disclosure of the trip to the Dominican Republic. *Id.* at ¶ 31. An internal investigation by UBS ensued, conducted in part by Defendant Rosenbaum, who is also an employee of UBS. *Id.* at ¶¶ 39-40. As part of the investigation, Defendants searched Plaintiff's emails relating to communications to his client's accounting firm. *Id.* at ¶ 32. Upon the conclusion of the internal investigation, UBS decided to fire Plaintiff on August 7, 2018, a decision that allegedly Defendants agreed with and advocated. *Id.* at ¶¶ 43-46, 55.

UBS communicated its decision to fire the Plaintiff, and the reasons behind the decision, to federal regulators on a Form U5. *Id.* at ¶ 60. UBS also demanded Plaintiff repay the over $1.9 million it had loaned Plaintiff during his employment, which was memorialized by 9 promissory notes[3] executed between February 2012 and February 2018. *Id.* at ¶¶ 64-66; Ex. A. Pursuant to the terms of his contract with UBS, Plaintiff was required to pay any outstanding amounts owed to UBS upon leaving its employment. *See* ECF No.1, Ex. A. Plaintiff objected to the repayment, claiming that he had been harmed by UBS and was unable to repay the loans because Defendant Goldman was actually his attorney in the interview with the SEC and committed legal malpractice and breached her fiduciary duty to him when she communicated her thoughts to UBS on Plaintiff's alleged failure to disclose material information during the SEC interview and that he had been defamed when UBS communicated to federal regulators the reason it had fired him on the Form U5. *Id.* at ¶¶ 64-68, 72-75, 76-79. Plaintiff alleges that as a result of his termination, Plaintiff has lost his clients, career, reputation, and financial security. *Id.* at ¶ 68.

### B. Procedural Background

Plaintiff originally filed a similar complaint against Defendant Goldman in the State Court of Fulton County, Georgia in August of 2021, which Goldman subsequently removed to the U.S. District Court for the Northern District of Georgia. *See Smith v. Goldman*, No. 21-cv-04390 (N.D. Ga.). The District Court for the Northern District of Georgia sent the matter to arbitration and an arbitration panel ultimately rejected Plaintiff's claims. *Id.* at ECF Nos. 1,2, 35. Plaintiff then voluntarily dismissed his complaint without prejudice against Defendant Goldman shortly thereafter. *Id.* at ECF No. 37. On August 8, 2022, Plaintiff initiated this case in the State Court of Fulton County, Georgia against the Defendants and Robert Tamarkin. Defendants and Robert Tamarkin then removed this case to the U.S. District Court for the Northern District of Georgia on October 3, 2022. On July 31, 2023, the District Court for the Northern District of Georgia dismissed the claims against Robert Tamarkin, denied Plaintiff's motion to remand, denied Plaintiff's motion for leave to amend his complaint, and transferred the remaining claims against Defendants Goldman and Rosenbaum to the District Court of New Jersey. *See* ECF No. 47.

Defendants filed this instant Motion to Dismiss on September 8, 2023, pursuant to FRCP 12(b)(1). *See* ECF No. 54. Plaintiff filed his opposition on October 2, 2023, and Defendants filed their reply on October 10, 2023. *See* ECF Nos. 58, 64. Plaintiff's

---

[3] Plaintiff similarly executed 10 transition agreements with UBS between 2012 and 2018 that contain arbitration agreements.

2

remaining claims against the Defendants include: Count One, legal malpractice against Defendant Goldman; Count Two, breach of fiduciary duty against Defendant Goldman; Count Three, third-party interference with at-will employment relationship against both Defendants; Count Four, Georgia racketeer influence and corrupt organizations against both Defendants; Count Five, civil conspiracy against both Defendants; Count Six, punitive damages against both Defendants; and Count Seven, attorneys' fees against both Defendants. *See* ECF No. 1.

## II. LEGAL STANDARDS
### A. Rule 12(b)(1) Standard

The Court can adjudicate a dispute only if it has subject matter jurisdiction to hear the asserted claims. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986). "Rule 12(b)(1) governs jurisdictional challenges to a complaint." *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 U.S. Dist. LEXIS 92711, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-3922, 2013 U.S. Dist. LEXIS 37639, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)).

### B. Rule 12(b)(6) Standard

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878, 69 V.I. 1034 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the

complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)). Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 U.S. Dist. LEXIS 154745, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 U.S. Dist. LEXIS 123840, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

## III. DISCUSSION

The Federal Arbitration Act (the "FAA") "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Defendants argue that Plaintiff's Complaint should be dismissed because it should have been filed in arbitration. Def. Mot. to Dismiss, at 6-7, ECF No. 54. Plaintiff purportedly consented to arbitration in the numerous promissory notes entered between Plaintiff and UBS between 2012 and 2018.[4] *Id.* Defendants argue the arbitration agreements with UBS are valid, the parties agreed to submit disputes over arbitrability to the arbitrator, and Plaintiff's claims against UBS in-house counsel fall squarely within the scope of the arbitration agreements. *Id.* at 7-11. Alternatively, Defendants request that if the Court declines to dismiss the Complaint under FRCP 12(b)(1), the Court should convert this motion to a motion under FRCP 12(b)(6) and compel arbitration while staying the case pending those proceedings. *Id.* at 12.

---

[4] The promissory notes contain a New York choice-of-law provision, which the court will apply as application of those provisions would not be contrary to a fundamental policy of New Jersey law. *See Wood v. Palisades Collection, LLC*, 2010 WL 2950323, at *4-5 (D.N.J. July 2010).

4

Plaintiff opposes the motion arguing that the alleged arbitration agreements are invalid because arbitration would be prohibitively expensive, and the agreements are unenforceable contracts of adhesion. Pl. Opp. at 3-4, ECF No. 58. Plaintiff further argues that he is entitled to discovery on the question of arbitrability. *Id.* at 4-5. Furthermore, Plaintiff asks this Court to treat Defendants' motion as one to compel arbitration and apply a summary judgment standard. *Id.* at 1. Defendants reply arguing the Court should dismiss the Complaint for lack of subject matter jurisdiction under FRCP 12(b)(1) or alternatively compel arbitration without the delay of discovery. Def. Reply at 3-4, ECF No. 64.

As an initial matter, the Court finds that it is more appropriate to treat the pending motion as one under Fed. R. Civ. P. 12(b)(6). Although the Third Circuit has not addressed this issue directly in a precedential opinion, an examination of the FAA reveals that the Court's power to stay a case necessarily implies it has subject matter jurisdiction over the matter. *See Venson v. Pro Custom Solar LLC*, Civil Action No. 19-19227 (ES) (MAH), 2022 U.S. Dist. LEXIS 178649, at *12 (D.N.J. Sep. 30, 2022) (finding a split between courts in the Third Circuit on whether Rule 12(b)(1) is the proper route for dismissing a suit based on an arbitration agreement and holding that "the better course is to address Defendants' motion under Rule 12(b)(6) rather than under Rule 12(b)(1)").

Plaintiff suggests the Court treat this pending motion as a motion to compel arbitration and use a summary judgment standard because "Plaintiff's complaint does not mention or otherwise allude to an arbitration agreement, nor does any claim rely upon an arbitration agreement." Pl. Opp. at 2. However, as both Plaintiff and Defendants recognize, the framework in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) applies. In *Guidotti*, the Third Circuit held that when it is "apparent, based on the 'face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* (internal citation omitted). However, if the complaint and supporting documents are unclear regarding the agreement to arbitrate, or "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties are entitled to discovery on the question of arbitrability. *Id.* at 776.

Here, although not explicitly referencing an arbitration agreement, part of the harm Plaintiff allegedly suffered stems from his loss of income to repay promissory notes Plaintiff executed with UBS as well as restrictive covenants within those promissory notes that limit Plaintiff's employability. Compl. at ¶¶ 64-68. Plaintiff's complaint, therefore, relies on these promissory agreements as the primary basis to claim damages against Defendants. Defendants, in turn, attached to their Motion to Dismiss all 18 promissory notes Plaintiff executed with UBS between 2012 and 2018, all of which explicitly contain arbitration agreements. *See* Def. Mot. to Dismiss, Exs. 1-18. Specifically, the arbitration agreements cover "any and all claims or disputes between [Plaintiff] and UBS, or its parents, subsidiaries, affiliates, partners, predecessors, and successor corporations and business entities or any entity of the UBS Group, and its and their respective officers,

5

directors, *employees*, and agents, including but not limited to all past, present or future claims based on, arising out of or which arose out of, or *in any way relating to [Plaintiff's] prospective or actual employment*, hiring, compensation, benefits or terms and conditions of employment with UBS..." *Id.* (emphasis added). There are 5 categories of excluded claims, none of which are applicable here. *See id.* All of Plaintiff's claims arose out of or in any way relate to his prospective or actual employment with UBS or the termination thereof. Therefore, it apparent on the face of the Complaint and the documents relied upon in the Complaint that Plaintiff's claims are clearly subject to arbitration.

Next, the Court turns to whether Plaintiff has responded with additional facts to place the agreement to arbitrate in issue, thereby entitling him to discovery. Plaintiff argues in opposition that the arbitration agreements are invalid because "(1) arbitration would be prohibitively expensive; and (2) the agreements are unenforceable contracts of adhesion." Pl. Opp. at 4. Plaintiff conclusory states these arguments and provides no factual basis upon which the Court could find that the agreement to arbitrate is at issue. Therefore, Plaintiff is not entitled to discovery on the issue of arbitrability. The Court finds that (1) there are valid agreements to arbitrate; (2) Plaintiff's claims fall within the scope of those agreements; (3) Plaintiff did not meet his burden of proving that his claims are unsuitable for arbitration; and (4) Plaintiff failed to come forth with facts that place the agreements to arbitrate in issue. Therefore, Defendants' Motion to Dismiss is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED**, and the parties shall proceed to arbitration.

An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: November 30, 2023